UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| JASON K. SIMPSON,<br><br>Plaintiff(s),<br><br>v.<br><br>S. DEVORE, et al.,<br><br>Defendant(s). | Case No. 2:16-CV-2981 JCM (VCF)<br><br>ORDER |

Presently before the court is defendants S. Devore[1], T. Faller, D. Hawkins, B. Leblanc, C. Lilienthal, T. Radke, L. Rinette, T. Schoening, and T. Snodgrass' (collectively, "defendants") motion for summary judgment. (ECF No. 81). Plaintiff Jason Simpson ("plaintiff") has not filed a response, and the time to do so has passed.

Also before the court is defendants' amended motion for summary judgment. (ECF No. 87). Plaintiff filed a response (ECF No. 92), to which defendants replied (ECF No. 94). Plaintiff also filed an unauthorized surreply. (ECF No. 95).

Also before the court is defendants' motion to strike plaintiff's surreply. (ECF No. 97). Plaintiff filed a response (ECF No. 98). Defendants have not filed a reply, and the time to do so has passed.

Lastly before the court is defendants' motion for leave to file a supplement to their amended motion for summary judgment. (ECF No. 100). Plaintiff has not filed a response, and the time to do so has passed.

---

[1] S. Devore has been dismissed from this action. *See* (ECF No. 66 at 10). Accordingly, the court will consider defendants' motions without regard to Devore.

**James C. Mahan**
**U.S. District Judge**

**I. Facts**

This *pro se* civil rights action under 42 U.S.C. § 1983 arises from an arrest that occurred in Las Vegas on May 25, 2016. (ECF No. 4). Plaintiff alleges that Las Vegas Metropolitan Police Department ("LVMPD") officers violated his Fourth Amendment right to be free from excessive force in executing his arrest. *Id.* Plaintiff further alleges that defendant Snodgrass violated his Fourth Amendment right to privacy when he allegedly left a search warrant, an affidavit, and the search warrant return in both vehicles Simpson drove the night of his arrest. *Id.*

Defendants have provided video evidence that informs the court about plaintiff's arrest.

*a. Events leading up to arrest*

On May 18, 2016, LVMPD detectives watched a Green BMW run a red light at a high rate of speed. (ECF No. 87-1 at 65–76). The detectives attempted to locate the vehicle, and eventually found it at a Money Tree parking lot. *Id.* The detectives activated their lights as they approached the vehicle to make a stop. *Id.* As the detectives approached, a single shot was fired through the back window of the BMW, after which the vehicle drove over a curb and sped away. *Id.*

The detectives later learned (and plaintiff admits) that plaintiff was the driver of the BMW and that he shot through the back window of the BMW in the direction of the detectives in an attempt to flee. (ECF No. 87-6 at 9). Accordingly, the detectives sought a warrant for plaintiff's arrest on May 23, 2016. (ECF No. 87-1 at 65–76).

*b. The arrest incident*

LVMPD assigned plaintiff's arrest to the Major Violator's Unit because of plaintiff's prior felonies and the severity of the charged crimes, which included, *inter alia*, attempted murder on a public officer, possession of a firearm by a prohibited person, resisting a public officer with a firearm, and "offense involving a stolen vehicle." *Id.*

Plaintiff alleges that on May 25, 2016, he and his girlfriend, Sarah Crebassa ("Crebassa") had been driving around Las Vegas in a white Mercedes owned by a third individual. *Id.* at 7. Plaintiff alleges that later that day, the Mercedes was "acting weird," so he met another female at Green Valley Ranch to exchange the Mercedes for her silver BMW. *Id.*

Plaintiff alleges that, throughout the day, he noticed a lot of "weird" vehicles flashing lights at him, and suspected that law enforcement was following him. *Id.* at 7. However, plaintiff admits he had been using methamphetamine that day, and wondered if he was being paranoid because of the methamphetamine or if strange things were really happening. *Id.* at 17.

Plaintiff and Crebassa ended up going to the parking garage at the Suncoast Hotel and Casino. *Id.* at 9. The detectives assigned to plaintiff's arrest had been surveilling him throughout the day and decided that the parking garage would be a best place to execute the arrest. (ECF No. 87-2 at 71).

The detectives were in several vehicles and blocked the exits of the parking garage so that plaintiff could not escape. *Id.* At one point, the detectives were able to "pin" plaintiff's BMW by parking multiple vehicles around it, closing off plaintiff's escape path ("jamming method"). *Id.* The vehicles were positioned such that the BMW's doors could not be opened. *Id.* Plaintiff put the car in reverse in an attempt to flee, but one of the detectives' vehicles drove towards him fast, trapping him. (ECF No. 87-1 at 9). The parties dispute which party caused a collision between the BMW and the vehicle that defendant Hawkins was driving. *Id.* Nevertheless, a collision occurred, and plaintiff remained immobilized. *Id.*

When plaintiff realized he was trapped, he put the car in park, turned off the engine, and put his hands in the air. *Id.* at 10. Defendant Hawkins got out of his vehicle, ran to the passenger's side of the vehicle with a baseball bat, and broke the window to get access to Crebassa in the back seat. (ECF No. 87-2 at 75). After a verbal exchange with plaintiff, defendant Ziros broke the driver's side window so the detectives could extract plaintiff from the BMW. *Id.* at 72.

The parties dispute what happened next, but the video evidence lends clarity to the situation. The following facts are verifiable based on the video evidence as well as the undisputed portions of the accounts from the parties.

Defendants Hawkins, Ziros, and LeBlanc pulled plaintiff from the vehicle and immediately took him to the ground on his stomach. (ECF No. 87-7, exh. AA); (ECF No. 87-1 at 13). Once plaintiff was lying on the ground on his stomach, defendants can be seen attempting to pull plaintiff's arms out from underneath him. (ECF No. 87-7, exh. AA). As plaintiff continued to

struggle, defendant Faller admits that he used his foot to pin plaintiff's thigh to the ground to keep him from kicking. (ECF No. 87 at 14). Defendant Radke admits he used a single open-handed strike to gain plaintiff's compliance with the handcuffing. *Id.* Defendant Ziros admits he put his foot on plaintiff's back to stop him from getting up while other defendants handcuffed him. *Id.*

The video evidence is consistent with this account and reveals that the total time that defendant spent on the ground while defendants attempted to handcuff him was approximately 30 seconds.[2] (ECF No. 87-1, exh. AA).

  *c. After the arrest incident*

Following the arrest, plaintiff was transported to CCDC where he received a medical screening that showed he had abrasions to his left ear, left wrist, right elbow, and right skull from the broken glass of the BMW. (ECF No. 87-5 at 127).

Thereafter, approximately four months following the arrest, plaintiff filed a complaint with the LVMPD Internal Affairs Bureau ("IAB") regarding his allegations of being punched and kicked repeatedly during the arrest, resulting in injuries. (ECF No. 87-7). The synopsis prepared by IAB found that plaintiff's allegations were without merit, noting the lack of medical evidence tending to show that plaintiff had been punched or kicked, and finding it problematic that plaintiff filed his complaint approximately four months following the incident. *Id.* Accordingly, IAB recommended that the case be closed. *Id.*

**II. Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

---

[2] The defendants not specifically described in the factual summary are those defendants who were either on the scene at the time or merely listed on the arrest report, which plaintiff referenced in crafting his complaint in this case. *See* (ECF No. 92).

James C. Mahan
U.S. District Judge

- 4 -

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040,

**James C. Mahan**
**U.S. District Judge**

1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. Discussion

Currently pending are plaintiff's two remaining § 1983 claims alleging violations of his Fourth Amendment rights to privacy and to be free from the use of excessive force. *See* (ECF No. 66). Specifically, plaintiff claims that defendants' immobilizing his car, breaking the windows, lifting him out of the car, and using force to handcuff him violated his Fourth Amendment rights.

Plaintiff also claims that defendant Snodgrass violated his Fourth Amendment right to privacy when he allegedly left a search warrant, an affidavit, and the search warrant return in both vehicles plaintiff drove the night of his arrest, which led to third parties discovering plaintiff's address and other personal, identifying information. *Id.* Defendants have filed a motion for summary judgment on both of plaintiff's claims as to all defendants, which the court now considers.

As a preliminary matter, because defendants have filed an amended motion for summary judgment (ECF No. 87), the court will deny as moot defendants' first motion for summary judgment. (ECF No. 81).

Additionally, the court will grant defendants' motion to strike plaintiff's surreply. (ECF No. 97). Surreplies are highly disfavored and courts in this district routinely interpret Local Rule 7-2 to allow filing of surreplies only by leave of court and only to address new matters raised in a reply to which a party would otherwise be unable to respond. *See, e.g., Lasko v. Am. Bd. of Surgery*, 2014 U.S. Dist. LEXIS 11740, 2014 WL 300930 at *1 (D. Nev. Jan. 27, 2014). Because

James C. Mahan
U.S. District Judge

- 6 -

the court did not grant plaintiff leave to file a surreply and because defendants' reply to their motion for summary judgment did not raise new matters, defendants' motion to strike is granted.

Finally, the court will deny as moot defendants' motion for leave to file a supplement, as the court finds it can resolve the pending motions without the benefit of defendants' proposed supplement. (ECF No. 100).

*a. Defendants' amended motion for summary judgment*

First, the court finds that plaintiff's claims against defendants in their official capacities must be dismissed. Indeed, "[c]laims under § 1983 are limited by the scope of the Eleventh Amendment." *Doe v. Lawrence Livermore Nat'l Lab.*, 131 F.3d 836, 839 (9th Cir. 1997). Insofar as state actors are sued in their official capacities under § 1983, plaintiffs are entitled only to injunctive relief. *Id.*

As to plaintiff's claims against defendants in their individual capacities, defendants argue that they are entitled to qualified immunity. (ECF No. 87).

Qualified immunity insulates public officials "'from liability for civil damages insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is broad, protecting "'all but the plainly incompetent or those who knowingly violate the law.'" *Lee v. Gregory*, 363 F.3d 931, 934 (9th Cir. 2004) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Determining whether a defendant is entitled to qualified immunity in a § 1983 action entails a two-part, conjunctive analysis exercised in the order the court deems appropriate. First, a court should consider whether the defendant's actions violated a constitutional right. *Conn v. City of Reno*, 572 F.3d 1047, 1062 (9th Cir. 2009). In making this inquiry, the court views the facts in the light most favorable to the party asserting the injury. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

Second, the court should determine whether the constitutional right was clearly established. *Conn*, 572 F.3d at 1062. A right is clearly established if "'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Id.* at 1062 (quoting *Saucier v.*

*Katz*, 533 U.S. 194, 202 (2001)). In making this inquiry, the court should consider "the specific context of the case" and not "broad general proposition[s]." *Saucier*, 533 U.S. at 201. It is the plaintiff's burden to show the constitutional right was clearly established. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002).

### i. Plaintiff's right to privacy claim

Defendant Snodgrass argues that he is entitled to qualified immunity on plaintiff's right to privacy claim because the right to informational privacy in this context was not clearly established at the time of the incident. (ECF No. 87 at 27). Indeed, Snodgrass notes that NRS § 179.075 requires officers to leave a copy of the warrant at the premises where the warrant was executed. *See* Nev. Rev. Stat. § 179.075.

In light of the state law requiring officers to leave copies of warrant documents at the premises where such warrants are executed, the court finds that it would not be clear to a reasonable officer that leaving warrant documents in a vehicle could potentially violate an individual's Fourth Amendment right to privacy.

Moreover, plaintiff has failed to set forth any authority to show that his "clearly established" constitutional rights were violated as a result of the warrant materials being left inside the vehicles. *See* (ECF No. 92). Accordingly, plaintiff has failed to meet his burden to show that defendant Snodgrass is not entitled to qualified immunity, and thus the court will grant defendants' motion for summary judgment as to plaintiff's right to privacy claim.

### ii. Plaintiff's excessive force claim

Defendants argue that they are entitled to qualified immunity because they did not violate any clearly established right of plaintiff's in their execution of his arrest. (ECF No. 87).

Indeed, the court finds that plaintiff has not met his burden to show that he had a clearly established constitutional right to be free from the type of force defendants used to arrest him under the attendant circumstances. *See* (ECF No. 92). Nevertheless, the court will conduct an independent analysis of plaintiff's "clearly established" rights at the time of his arrest.

Under the Fourth Amendment, police may use only such force as is objectively reasonable under the circumstances. *See Graham v. Connor*, 490 U.S. 386, 397, 104 L. Ed. 2d 443, 109 S.

- 8 -

Ct. 1865 (1989). Determining whether force used in making an arrest is excessive or reasonable "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

Here, the court finds that it would not be clear to the reasonable officer that use of the "jamming method" in this context would be unlawful. Indeed, the court finds that a reasonable officer could determine that the use of such a prophylactic was justifiable in this context, given plaintiff's tendency to flee and the violent nature of the crimes for which defendants were attempting to execute his arrest. *See, e.g., Cunningham v. Gates,* 229 F.3d 1271, 1290 (9th Cir. 2000) (upholding a finding of qualified immunity where officers used "jamming method" to stop armed individuals from escaping police capture following a robbery).

Moreover, the court finds that it would not be clear to the reasonable officer that plaintiff's right to be free from excessive force was violated during the execution of his arrest. Defendants had reason to believe that plaintiff was armed and would make every attempt to flee from arrest. Indeed, plaintiff had already shot at law enforcement officers days earlier, had fled from law enforcement in two different automobiles, and continued to struggle even after defendants had removed plaintiff from the BMW.

Moreover, the video and medical evidence showing how the arrest was effectuated and the minor injuries that plaintiff sustained demonstrates that the amount of force applied by defendants was reasonable. Under these circumstances, the court finds that defendants' actions did not violate plaintiff's clearly established rights in the course of the arrest. The court thus finds that defendants are entitled to qualified immunity on plaintiff's excessive force claim and will grant defendants' motion for summary judgment.

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendants' first motion for summary judgment (ECF No. 81) be, and the same hereby is, DENIED as moot.

James C. Mahan
U.S. District Judge

- 9 -

IT IS FURTHER ORDERED that defendants' amended motion for summary judgment (ECF No. 87) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendants' motion to strike (ECF No. 97) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendants' motion for leave to file supplement (ECF No. 100) be, and the same hereby is, DENIED as moot.

The clerk is instructed to enter judgment accordingly and close the case.

DATED March 20, 2019.

                                                 /s/ James C. Mahan
                                      UNITED STATES DISTRICT JUDGE